**In re Complaint of Neva C. PARHAM, Executrix of the Estate of L. N. Parham, Deceased, as owner of a certain unnamed vessel, for exoneration from, or limitation of, liability.**

No. H 69–C–35.

United States District Court, E. D. Arkansas, E. D.

Dec. 29, 1971.

Thomas M. Bramhall and Chester C. Lowe, Jr. (Teague, Bramhall, Davis & Plegge), Little Rock, Ark., for plaintiff.

Winslow Drummond and Gordon S. Rather, Jr. (Wright, Lindsey & Jennings), Little Rock, Ark., for claimant Carson Pelegrin.

James Van Dover (Daggett & Daggett), Marianna, Ark., for claimant Sam Scott, Jr.

Stephen A. Matthews (Bridges, Young, Matthews & Davis), Pine Bluff, Ark., for claimant Porter Young.

OREN HARRIS, District Judge.

## MEMORANDUM OPINION

This admiralty proceeding is brought by Neva C. Parham, Executrix of the Estate of L. N. Parham, Deceased, seeking exoneration from or limitation of, liability, pursuant to Rules 9(h) and F of the Federal Rules of Civil Procedure.

The plaintiff's decedent was a resident of Phillips County, Arkansas, and was, until his death, the owner of an all-welded aluminum-construction hull, twin screw inboard/outboard propulsion (2–110 HP Chrysler engines), self-propelled, houseboat-type, pleasure craft, approximately 34 feet long, 12 feet in breadth and 3 feet in depth.

The plaintiff also claims jurisdiction under 46 U.S.C.A. § 183, alleging that the decedent at all times exercised due diligence to make and to maintain the vessel seaworthy in all respects.

On May 19, 1969, at approximately 2:30 a.m., while the decedent's vessel was moored at Fridell's Boat Dock, an explosion occurred with resulting fire on board of the vessel which totally destroyed it. Plaintiff's decedent was aboard the craft at the time of the explosion and sustained serious injuries which resulted in his death on May 22, 1969.

In seeking exoneration from, or limitation of, liability, the complaint alleges that the explosion and fire and the loss, damage or destruction resulting therefrom were occasioned and incurred without fault on the part of plaintiff's decedent and without his privity or knowledge. It is also alleged that the amount or value of the interest of the plaintiff's decedent in the vessel did not exceed the sum of $1500. The plaintiff has deposited with the Clerk of the Court the sum of $1500 as security for the benefit of any claimants as required by the rule providing for exoneration, or limitation of liability.

The explosion and fire aboard the vessel in question resulted in substantial damage to other vessels or craft moored at the same dock. Numerous claims have been filed, including two lawsuits in the Phillips County Circuit Court. Pursuant to the complaint filed in this proceeding, this Court issued a notice to all persons asserting claims with respect to which the complaint seeks limitation requiring the claims to be filed with the Clerk of this Court and enjoined any further actions, suits or proceedings already commenced or the commencement of further suits or proceedings against the estate of the plaintiff's decedent.

The plaintiff and the party-claimants to this proceeding have filed a pre-trial stipulation in which certain facts and circumstances surrounding the incident are stipulated.

The parties stipulated, inter alia, that L. N. Parham, deceased, was the owner of the craft at the time of his death and that on May 19, 1969, while the decedent's boat was moored at Fridell's Boat Dock on the Mississippi River, near Helena, Arkansas, at approximately 2:30 a.m., a violent explosion and fire occurred on board the vessel. The boat was totally destroyed and the decedent who was aboard the craft at the time of the explosion sustained serious injuries which resulted in his death on May 22, 1969.

It is further stipulated that Neva C. Parham was appointed Executrix of the Estate of L. N. Parham, Deceased, on May 26, 1969. Also, that claims for damage arising out of the explosion and fire have been filed in this proceeding in behalf of Carson Pelegrin, Sam Scott, Jr., Frank Fridell and Porter Young. The claim of Frank Fridell has been abated.

It is further stipulated that the damages sustained by the claimants are as follows:

1. $2,517.92 by Carson Pelegrin.

2. $9,845.55 by Sam Scott, Jr.

3. $299.45 by Porter Young.

4. $23,000.00 by Carson Pelegrin (INA).

The type, size and description of the vessel's damages which were owned by the claimants are undisputed.

It is further undisputed that the plaintiff's decedent alone occupied the vessel at the time of the explosion and that the claimants' damages resulted from the explosion and fire which destroyed the decedent's vessel.

It is also stipulated by the attorneys for the parties to this proceeding that the first notice of the plaintiff's appointment as Executrix was on May 28, 1969. Further, by letter dated June 12, 1969, Insurance Company of North America, carrier for Carson Pelegrin, notified Aetna Insurance Company, decedent's insurer of Insurance Company of North America's subrogation claim of $22,000, which was subsequently changed to $23,000 by letter dated September 30, 1969.

It is undisputed that Aetna Insurance Company by letters of June 17, 1969, and June 23, 1969, acknowledged receipt of the June 12 subrogation letter, letter of Insurance Company of North America. The attorneys further stipulated to additional facts stated herein by the parties having to do with the notices and restraining suits in connection with the complaint for exoneration from, or limitation of, liability. All claims are timely filed as required by law, verified and properly presented to the plaintiff or the Estate of L. N. Parham, Deceased.

The parties have conducted extensive pre-trial discovery and it appears that both sides have afforded each other an optimum opportunity for discovery. Substantial questions of law by both parties have been presented on sundry motions.

Pursuant to regular notice, the case was tried to the Court in Helena, Arkansas, commencing Monday, September 13, 1971.

At the conclusion of the testimony, exhibits, and statements of counsel in the trial of the case, the parties were given an opportunity to file briefs on the remaining questions to be determined.

■■ At the outset of the trial the plaintiff, as the moving party in this proceeding, announced that she had no proof to offer on the limitation question and acknowledged that she could not sustain the allegations of the complaint as to the seaworthiness of the vessel and

establishing that as a matter of fact that the decedent was free of "privity or knowledge" on the question of the plaintiff's right to limitation of liability. Pursuant thereto, the Court ruled that the petition under the act[1] providing for limitation could not be sustained since the plaintiff, as the petitioner, had the burden of proving lack of "privity or knowledge".

■ Under 46 U.S.C.A. § 183, the liability of the owner of a vessel "for any loss, damage, or injury by collision, or for any act * * * loss, damage * * * done, occasioned, or incurred, without the privity or knowledge" of the owner shall not exceed the value of the owner's interest in the vessel and its freight. If the owner is chargeable with privity or knowledge, he may not limit. Avera v. Florida Towing Corporation, 322 F.2d 155, 166, 5 Cir. 1963; States Steamship Company v. United States, 259 F.2d 458, 466, 9 Cir. 1958, cert. den'd 358 U.S. 933, 79 S.Ct. 316, 3 L.Ed.2d 305; The Cleveco, 154 F.2d 605, 613, 6 Cir. 1946.

It is well established that a petitioner in limitation as the prime mover bears the burden of proving lack of privity or knowledge. Coleman v. Jahncke Service, Inc., 341 F.2d 956, 5 Cir. 1965, see numerous cases cited in footnote 6 at p. 958; Petition of Moore-McCormack Lines, D. C., 147 F.Supp. 816, 819.

In *McCormack*, supra, relied upon by both parties, it is stated by the court at p. 820, as follows:

"At the very outset of the trial proceedings, therefore, the petitioner should adduce evidence in substantiation of this allegation. The petitioner which is here seeking exoneration from or limitation of its liability, must come forward first with evidence with respect to (a) the seaworthiness of the vessel and (b) its lack of privity or knowledge of any defect rendering the vessel unseaworthy. Thereupon, the claimants, who will have had the opportunity to cross-ex-

1. 46 U.S.C.A. §§ 181–192.

amine the petitioner's witnesses or otherwise speak to the petitioner's proofs, may introduce their own affirmative evidence tending to show that the vessel was unseaworthy or that the owner had knowledge of defects rendering the vessel unseaworthy. The claimants may also, if they choose, introduce affirmative evidence of negligence on the part of the petitioner and its vessel."

■ Since the plaintiff offers no proof to show that the vessel was seaworthy or any lack of privity or knowledge of any defect rendering the vessel unseaworthy, the next question to be resolved is whether the plaintiff is liable. If there is no liability, the case concludes at that point and the plaintiff is entitled to a decree of exoneration. In other words, the matter proceeds to the question of negligence on the part of the owner of the vessel. On this question, the claimants bear the burden of proof. Coleman v. Jahncke Service, Inc., supra. See Gilmore and Black, Admiralty, p. 705, n. 3; *Moore-McCormack*, supra.

In assuming their burden of proof, the claimants proceeded with the testimony of numerous witnesses. Even though the parties have stipulated as to substantial facts, the testimony is conflicting in other areas. The claimants' major contention on which they submit testimony is that the decedent's vessel had a gasoline leak and as a result fumes accumulated in the bilge area of the vessel which caused the explosion. Two witnesses directed their testimony to this point. One witness, Durwood Johnson, stated affirmatively that the vessel had a problem with gas leakage since its purchase by the decedent. Both witnesses testified that the seller of the craft to the decedent had been called to correct the gas leakage. There was testimony that fumes from gas leakage accumulated in the bilge area. It was stated that oil and gas can normally be found in the bilge of a craft such as the one involved with the explosion. The testimony further established that you go into the bilge area through an opening in the rear of the boat. The only way to alleviate the gas fumes is by the process of a blower which is to be used for a short period of time before it is operated.

The plaintiff contends and offered the deposition of an expert witness that the explosion could have occurred from butane leakage in the vicinity of the stove and refrigerator on the craft. Furthermore, the plaintiff contends that the explosion could have occurred in many ways without the engines being started and the evidence is lacking as to what "accidental" means precipitated the explosion.

From the testimony of the witnesses, the exhibits and inferences when considered in the light of stipulations of the parties, the Court is unimpressed by the contention that the explosion occurred as a result of butane leakage in the bilge. The testimony is substantial that this contention is most unreasonable.

■ The Court is also unimpressed with the contention that the explosion was precipitated by accidental means. The Court is impressed from the testimony, exhibits as to the condition of the boat following the explosion, and the admitted facts that the explosion occurred in the bilge area due to accumulation of gas fumes.

Whether the explosion was caused by the intoxicated condition of the decedent would be a matter of speculation. It is admitted that the decedent was on the vessel alone and it is established that he was drinking substantially during the day and the evening to the extent that he was intoxicated.

It is also unimportant on the question of liability from the negligence of the decedent as to whether the explosion was precipitated by some act of the decedent such as smoking, defective generator, or other electrical systems on the boat, or whether the decedent started the engines and failed to use the blower prior thereto.

■ Neither does the Court reach the question of negligence on the part of the

decedent from inferences by the application of res ipsa loquitur. The Court is of the opinion that res ipsa could very well be applied as it has been held applicable to admiralty proceedings. Since the Court concludes that the explosion was caused by gas fumes in the bilge area, the Court would have no difficulty in applying the rule in Petition of Bogan, 103 F.Supp. 755 (D.N.J.1952).

It is established that with the explosion, the decedent was blown partially off of the burning vessel on the dock sufficiently for him to be rescued by one of the claimant's witnesses. In this condition on being rescued he stated to the witness, "Oh, Sam; oh, Sam, I messed up".

Jurisdiction is admitted and established. 46 U.S.C.A. § 183(a).

Since the plaintiff failed to assume the burden of proof, limitation of liability cannot be established and is denied. The Court further concludes that the vessel was on the Mississippi River, a navigable body of water. It is further established that the plaintiff failed to assume the burden that there was lack of privity or knowledge as to the condition of the vessel and concludes that it was unseaworthy as applicable within the meaning of the statute.

The Court further concludes from the testimony, stipulation of the parties, exhibits and the entire record, that the decedent was negligent in connection with the unseaworthy condition of the vessel in that he had knowledge of a history of gas leakage in the bilge of the vessel. Having knowledge of the condition of the craft with reference to gas leakage and fumes, privity and knowledge are deemed to exist where the owner had the means of knowledge or as otherwise stated, where knowledge would have been obtained from reasonable inspection. China Union Lines, Ltd. v. A. O. Andersen & Co., 364 F.2d 769, 787 (5 Cir. 1966).

"With the duty to make inquiry 'the measure' of the knowledge 'is not what the owner knows, but what he is charged with finding out.' Great Atlantic & Pacific Tea Co. v. Brasileiro, 2 Cir., 1947, 159 F.2d 661, 665, 1947 AMC 306. For ' * * * knowledge means not only personal cognizance but also the means of knowledge—of which the owner * * * is bound to avail himself—of contemplated loss or condition likely to produce or contribute to loss, unless appropriate means are adopted to prevent it.' The Cleveco, 6 Cir., 1946, 154 F.2d 605, 613, 1946 AMC 933." Avera v. Florida Towing Corporation, 322 F.2d 155.

It is also held that "negligent failure to discovery", constitutes privity and knowledge within the meaning of the statute. In the instant case, adequate inspection would have disclosed the condition that existed in the bilge of the craft which caused the explosion. It is obvious the decedent knew or should have known from proper inspection that the condition existed which would obviously cause an explosion such as resulted which caused the damage stipulated in this record to the claimants.

In Avera v. Florida Towing Company, supra, at p. 166, the court stated:

"Once we hold that Coppedge, as did Stover in Linseed King, had the duty of making inspection and inquiry, it follows without any question that through him the corporation is chargeable with privity and knowledge of Avera's incompetency and the tug master's negligence in taking him aboard as deckhand without first giving him adequate instruction. * * * Whether viewed in terms of negligent unseaworthiness from incompetency or inadequacy of the crew, Admiral Towing Co. v. Woolen, 9 Cir. [290 F.2d 641] or negligence in the hiring of a green, inexperienced, young 17-year-old boy without adequate instruction, see Davis v. Parkhill-Goodloe Co., 5 Cir., 1962, 302 F. 2d 489, 1962 AMC 1720, the fault in allowing Avera to sail with the tug and his injury occurring on the end of that voyage are all chargeable to the

corporate shipowner as its acts done or omitted with its privity or knowledge"

In considering the stipulated and uncontradicted facts of this record, the Court concludes that the decedent undertaking the responsibility for the craft and charged with the duty of proper and adequate inspection undertook the responsibility for the craft and its activities while docked, should have discovered, if not actually knowing, the dangerous condition of the craft and taken such action to eliminate it, his failure to do so was negligence on his part. It follows that he is liable for any damage that results of such negligence.

This memorandum incorporates the findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

An order will be entered denying limitation of and exoneration from liability by the plaintiff and judgment will be entered for the claimants in accordance with stipulation of the parties.